FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 10, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN S., | No. 1:17-cv-03185-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY |
| vs. | JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR |
| COMMISSIONER OF SOCIAL SECURITY, | SUMMARY JUDGMENT |
| Defendant. | ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §
404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing work that he or she has performed in
the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is
capable of performing past relevant work, the Commissioner must find that the
claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of
performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing other work in the national economy.
20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner
must also consider vocational factors such as the claimant's age, education and
past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of
adjusting to other work, the Commissioner must find that the claimant is not
disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to
other work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## CHILDHOOD DISABILITY INSURANCE BENEFITS

Title II of the Social Security Act provides disabled child's insurance benefits based on the earnings record of an insured person who is entitled to old-age or disability benefits or has died. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a). The same definition of "disability" and five-step sequential evaluation outlined above governs eligibility for disabled child's insurance benefits. *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(1)-(2). In addition, in order to qualify for disabled child's insurance benefits several criteria must be met. 20 C.F.R. §§ 404.350(a)(1)-(5). As relevant here, if the claimant is over 18, the claimant must "have a disability that began before he became 22 years old." 20 C.F.R. § 404.350(a)(5).

## ALJ'S FINDINGS

On September 19, 2011, at age 27, Plaintiff applied for child disability insurance benefits (CDB claim), alleging a date of disability onset beginning on July 16, 1990, at age five. Tr. 215-18. Plaintiff's application was denied initially

and upon reconsideration.  Tr. 93-99.[1]  Plaintiff appeared before an administrative

law judge (ALJ) on May 1, 2013.  Tr. 36-76.  At the hearing, Plaintiff amended his

alleged onset date to July 19, 2002, at age 18.  Tr. 42.  On June 24, 2013, the ALJ

denied Plaintiff's claim.  Tr. 16-35.  On December 30, 2014, the Appeals Council

denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff filed a timely appeal in this

Court.  *Sturm v. Colvin*, No. 1:15-cv-03034-MKD (E.D. Wash. Feb. 14, 2015)

(Complaint, ECF No. 4).

On February 2, 2016,
While the appeal on the CDB claim was pending, on February 2, 2016,

Plaintiff filed a new Title II DIB application (DIB II), Tr. 916, and a new Title XVI

SSI application (SSI II), Tr. 902.  In those applications, Plaintiff alleged on onset

date of January 2016, which is ten years after the relevant period in the CDB claim.

Tr. 902.

On February 17, 2016, this Court reversed the decision on the CDB claim

and remanded the proceedings for further review of Plaintiff's claim and

_____

[1] The administrative transcript also includes denials of Plaintiff's simultaneously

filed Title II disability insurance (DIB I) and Title XVI supplemental security

income benefits applications (SSI I), which were simultaneously filed with

Plaintiff's child disability insurance (CDB) claim.  Tr. 198-201; 202-09.  These

applications are not at issue in this appeal.

ORDER - 7

consideration of the evidence of Plaintiff's foot impairment and lay witness testimony.  Tr. 875-900.

On March 15, 2016, the Appeals Council vacated the decision on the CDB claim and remanded for further review.  Tr. 914-17.  The Appeals Council also issued this directive:

> The claimant filed an electronic subsequent claim for Title II disability benefits on February 2, 2016.  The Appeals Council's action with respect to the current electronic claims renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will consolidate the claim files, create a single electronic record and issue a new decision on the consolidated claims (20 CFR 404.952 and 416.1452, HALLEX I-1-10-10).

Tr. 916.

Another administrative hearing was held on February 14, 2017.  Tr. 802-37. During the hearing Plaintiff amended his alleged date of onset to July 11, 2006, just prior to his 22nd  birthday, Tr. 804, although the ALJ relied upon the date of July 1, 2006.  Tr. 776.

On August 21, 2017, the ALJ again issued an order regarding Plaintiff's CDB claim, which again denied the claim.  Tr. 772-801.  Initially, the ALJ's decision discussed the two subsequent adult disability applications (DIB II and SSI II).  First, the ALJ dismissed Plaintiff's DIB II claim filed February 2, 2016, noting Plaintiff had not acquired sufficient quarters of coverage to be insured.  Tr. 794. Second, the ALJ noted that he would not consider the SSI II claim because:

ORDER - 8

> The [Appeals Council's] remand order from March 15, 2016 did not mention the Title XVI application or otherwise direct me to consider this application . . . . I therefore do not have jurisdiction over this application. The claimant did not seek reconsideration of his Title XVI application, making the initial determination the administratively final determination of this application.

Tr. 776.

With respect to the merits of the CDB claim, the ALJ found that Plaintiff had not attained the age of 22 as of July 1, 2006. Tr. 778. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2006. Tr. 778. At step two, the ALJ found Plaintiff had the following severe impairments prior to attaining the age of 22: organic mental disorder (learning disorder and/or attention deficit disorder), autistic disorder, foot impairment, and obesity. Tr. 778. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 778. The ALJ then concluded that prior to attaining age 22, Plaintiff had the RFC to:

> lift and carry ten pounds frequently and twenty pounds occasionally. He could stand and/or walk for fifteen-minute intervals, for two to four hours per eight-hour workday. He had no sitting restrictions. He could not climb ladders, rope, or scaffolding. He could occasionally kneel, crawl, and climb ramps and stairs. He could not work at unprotected heights or operate heavy equipment. He could remember, understand, and carry out instructions for tasks generally required by occupations with a specific vocational preparation (SVP) of two or less. He could read and understand written instructions associated with such tasks. He could occasionally write as part of his work duties. He could have occasional superficial face-to-face interaction with the general public. He had no restrictions with public

ORDER - 9

interaction over the phone or internet. He could work in proximity to small groups of people, of less than twenty-five people. He could occasionally interact with coworkers and supervisors. He could adjust to work setting changes generally associated with occupations with a SVP of two or less. He could interact on a frequent basis with supervisors for a short period during job training, up to thirty days. He could not drive as part of his job duties.

Tr. 781-82.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 792. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform such as document preparer, toy stuffer, and telephone information clerk. Tr. 793. The ALJ also noted that in May 2013, the vocational expert had identified other sedentary jobs that could be performed by an individual with Plaintiff's mental limitations, including assembler and semiconductor bonder. Tr. 793. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, any time prior to the date Plaintiff attained age 22. Tr. 793.

It does not appear Plaintiff filed any written exceptions with the Appeals Council[2] and the Appeals Council did not assume jurisdiction on its own authority, thus the ALJ's 2017 ruling became the final decision of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  20 C.F.R. § 404.984.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him child disability insurance benefits under Title II and declining jurisdiction over his application for supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly followed the Appeals Council's remand order;

2.  Whether the ALJ properly weighed the opinion of Plaintiff's podiatrist; and

3.  Whether the ALJ properly weighed Plaintiff's symptom claims.

_____

[2] The ALJ's Notice of Decision advised Plaintiff that he was not required to file any written exceptions with the Appeals Council before filing an appeal in this Court.  Tr. 773.

ORDER - 11

*See* ECF No. 15 at 8-20.

**DISCUSSION**

**A. SSI Application**

Plaintiff contends the ALJ erred by failing to consolidate Plaintiff's Title XVI SSI claim (SSI II) with his Title II CDB and DIB II claims. ECF No. 15 at 8-13.

*1. Background Regarding Title II and Title XVI Claims*

The Appeals Council's March 15, 2016 Order remanding Plaintiff's Title II CDB claim noted that "[t]he [Plaintiff] filed an electronic subsequent claim for Title II disability benefits on February 2, 2016. The Appeals Council's action with respect to the current electronic claims renders the subsequent claim duplicate." Tr. 916. The Order then directed: "Therefore, the Administrative Law Judge will consolidate the claim files, create a single electronic record and issue a new decision on the consolidated claims (20 CFR 404.952 and 416.1452, HALLEX I-1-10-10)." Tr. 916. The ALJ concluded that the Appeal Council's directive did not pertain to Plaintiff's subsequently filed Title XVI SSI (SSI II) claim and he did not consider it. Tr. 776.

Plaintiff disputes the ALJ's interpretation of the Remand Order. Although the Remand Order referenced only Plaintiff's Title II disability benefits (DIB II) claim filed February 2, 2016, Plaintiff claims the Remand order can "only be read"

as to direct consolidation of all of Plaintiff's Title II (CDB and DIB II) and Title XVI SSI (SSI II) claims because the stock language the Order utilized cited to both the Title II and the Title XVI regulations, 20 C.F.R. § 404.952 and § 416.1452. ECF No. 15 at 10. Plaintiff asserts he presumed consolidation of the SSI II claim was ordered and as a result he did not timely appeal the denial of the SSI II claim. ECF No. 15 at 10. Plaintiff asks the Court to rectify this error by remanding for additional consolidated proceedings considering the SSI II claim. ECF No. 15 at 20. Defendant contends the ALJ did not error and this Court lacks jurisdiction to review the discretionary act of not consolidating the SSI claim. ECF No. 16 at 10.

*2. Court's Scope of Review*

The Social Security Act "clearly limits judicial review to a particular type of agency action," *Califano v. Sanders*, 430 U.S. 99, 109 (1977), "any final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). In *Mathews v. Eldridge*, the Supreme Court held that the "final decision of the [Commissioner] made after a hearing" consists of two elements: (1) presentment of the claim for benefits to the Commissioner; and (2) complete exhaustion of administrative remedies. *Mathews*, 424 U.S. 319, 328–30 (1976). Under Ninth Circuit law, " '[f]inal decision,' read in the context of the elaborate scheme for administrative determination of disability claims which precedes it, plainly refers to a decision on the merits." *Peterson v. Califano*, 631 F.2d 628, 630 (9th Cir.

ORDER - 13

1980); *Matlock v. Sullivan*, 908 F.2d. 492, 494 (9th Cir. 1990). The exception to §

405(g) are constitutional questions, which are unsuited to resolution in

administrative hearing procedures. *Califano*, 430 U.S. at 109.

In the present proceedings, the ALJ's alleged failure to follow the Remand

Order is not a proper basis for a reversal or remand. Plaintiff's Title XVI (SSI II)

claim was denied on the merits at the initial level on March 7, 2016 in a separate

determination without a hearing. Tr. 969-82. The only "final decisions" in this

matter pertain to Plaintiff's Title II claims, and as the Ninth Circuit instructs, "[t]he

ALJ's errors are relevant only as they affect that analysis on the merits." *See*

*Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011);

*Wentzek v. Colvin*, 2013 WL 4742993, at *4 (D. Or. Sept. 3, 2013) (explaining that

where an ALJ fails to comply with a remand order, reversal is only warranted to

the extent that the reviewing court found harmful error regarding issues

challenging disability determination on the merits). Moreover, Plaintiff has not

presented this Court with any allegation of a constitutional violation. Whether the

ALJ complied with the Appeals Council's Remand Order is non-reviewable in this

instance as the alleged error, the failure to consolidate, does not relate to the

Court's review of the ALJ's "final decision" on the merits of his Title II claims.

This conclusion is wholly consistent with the cases cited by Plaintiff which

involved reviewable errors, ECF No. 17 at 4, regarding the ALJ's failure to comply

ORDER - 14

with remand instructions related to the substantive merit of the disability claim.

ECF No. 17 at 4 (citing *Jackson v. Berryhill*, 2018 WL 1466423 (W.D. Wash.

March 26, 2018) (failure to reconcile doctor's opinion as directed); *Scott v.

Barnhart*, 592 F.Supp.2d 360 (W.D.N.Y. 2009) (failure to follow remand

instructions pertaining to the RFC and hypothetical); *Salvati v. Astrue*, 2010 WL

546490 (E.D. Tenn. Feb. 10, 2010) (failure to follow order to evaluate mental

impairment with a special technique)).

### 3. The ALJ properly interpreted the Appeals Council's Remand Order

In the alternative, the Court finds that the ALJ property interpreted the

Appeal Council's Remand Order as consolidating only the Title II DIB claims.

Plaintiff contends that the intent of the Appeals Council's order was to

eliminate duplicate claims for administrative efficiency and the failure to

consolidate the SSI II claim "makes no logical sense." ECF No. 17 at 5. However,

the Remand Order only explicitly mentions the "Title II disability benefits [claim

filed] on Feb. 2, 2016," not the SSI II claim. Tr. 916. The Social Security's

hearing, appeals, and litigation manual (HALLEX) directs the following regarding

applications that are not rendered duplicate: "[i]f the subsequent application

involves an overlapping period of time with the prior claim, the AC may direct the

ALJ consolidate the claims and adjudicate them together on remand." HALLEX I-

1-10-35. Here, the relevant focus of the CDB claim was the period beginning prior

ORDER - 15

to Plaintiff's 22nd birthday (July 2006), whereas the SSI II claim pertained to the period beginning nearly ten years later on January 1, 2016. Given the explicit direction in the Remand Order, followed by what appears to be a frequently used boilerplate list of citations, the ALJ's interpretation of the Remand Order was reasonable.

The Court further notes that approximately 17 months after the Remand Order, Plaintiff was sent a Notice of Hearing confirming that the purpose of the hearing on February 14, 2017 would be to consider the remanded Title II claim. Tr. 1002. The Notice instructed Plaintiff that if there was disagreement with the issues, he should notify the ALJ in writing "as soon as possible." Tr. 1003. It does not appear that Plaintiff objected to the Notice of Hearing. At the hearing, there was no specific mention of the Remand Order, consolidation, or Plaintiff's Title XVI (SSI II) application.[3] Plaintiff did not seek review or file exceptions with the Appeals Council regarding this issue. Plaintiff's request that this Court reject the ALJ's interpretation of the Remand Order, in effect, calls for review of the Appeals Council's non-final decision and conflicts with the rationale and purpose of

---

[3] At the outset of the hearing, Plaintiff's counsel stated that "just for procedural ease" he would amend the alleged onset date to July 11, 2006 noting "[t]hat preserves his Child Disability Benefits time period." Tr. 804.

administrative exhaustion which is to give the agency the opportunity to correct its own errors.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinion of Plaintiff's treating podiatrist, Stuart B. Cardon, DPM. ECF No. 15 at 13-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

Dr. Cardon provided a number of opinions regarding the functional impact of Plaintiff's foot impairment:

(1)     *March 2012*: Plaintiff cannot stand or walk more than 30 minutes at a time. Tr. 1213 (progress note).

(2)     *May 2012*: Plaintiff has to lie down during the day; Plaintiff's condition will deteriorate if standing or walking for "long periods of time," greater than two hours a day; Plaintiff would miss on average four days a month if standing "gets too much to be able to do so"; Plaintiff's limitations have existed since July 11, 2006. Tr. 758-59 (Medical Report).

(3)     *April 2016*: Plaintiff does not need to lie down; Plaintiff's condition would deteriorate if work included standing greater than two hours a day, more than 30 minutes at a time; Plaintiff would miss on average three days per month

depending on the amount of standing or walking that was required; Plaintiff's limitations have existed since November 18, 2014. Tr. 1144-45 (Medical Report).

(4) *Jan. 2017*: Plaintiff's condition has since at least July 11, 2006 met the definition of "major dysfunction of a joint," resulting in an inability to ambulate effectively to carry out activities of daily living. Tr. 1751-52 (Medical Report).

The ALJ considered, and partially credited, Dr. Cardon's opinions. Tr. 788-89. Specifically, the ALJ determined that the combination of Plaintiff's obesity and Dr. Cardon's 2012 diagnosis of a progressive condition of the foot justified finding Plaintiff had a severe impairment of the foot as of July 2006. Tr. 788. The ALJ also gave Dr. Cardon's 2012 and 2016 assessments "some weight" and "giving him the benefit of the doubt," found that as of July 2006, the combination of Plaintiff's obesity and foot impairment limited him to standing and/or walking for fifteen-minute intervals. Tr. 788. However, the ALJ rejected Dr. Cardon's opinions that Plaintiff could not have stood or walked in excess of two hours total in an eight-hour day, would have had attendance problems, and had an impairment at listing-level severity as of July 2006. Tr. 788-89.

Plaintiff contends these opinions were uncontradicted. ECF No. 15 at 14. However, in February 2012, state agency physician Robert Hoskins, M.D., opined that Plaintiff had no medically determinable physical impairment as of 2006. Tr.

89-90 (Feb. 22, 2012). The ALJ gave some weight to this assessment. Tr. 788. Therefore, the ALJ needed to identify specific and legitimate reasons to discredit Dr. Cardon's opinions. *Bayliss*, 427 F.3d at 1216. However, the reasons set forth by the ALJ also meet the higher clear and convincing standard relied upon by Plaintiff.

The ALJ provided several reasons for discounting Dr. Cardon's opinions. Tr. 788-89. First, the ALJ found Dr. Cardon's "basis for opinions of [Plaintiff's] functioning prior to September 2010 is undetermined, as he has no documented review of evidence prior to 2010." Tr. 789. Plaintiff does not challenge this significant finding; thus, any challenge is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity). The length of the treatment relationship is relevant to how much weight a doctor's opinion should be accorded. 20 C.F.R. § 404.1527(c). Although retrospective assessments should not be disregarded solely because they are rendered retrospectively, in *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989), the Ninth Circuit found that when a treating physician opines about a claimant's condition prior to the date that the treating physician had direct personal knowledge of the condition, the treating physician is "scarcely different from any non-treating physician with respect to that time period." 881 F.2d 747, 754 (9th Cir. 1989) (ALJ properly

discounted doctor's retrospective opinion about a disability onset date in light of the fact that the doctor did not see the claimant until two years later and there was no other objective medical evidence of disability during the time alleged); *Johnson v. Shalala*, 60 F.3d 1428, 1432-1433 (9th Cir. 1995) (concluding that because a physician's retrospective assessment included no specific assessment of claimant's functional capacity prior to that date, the ALJ's rejection of his testimony was reasonable); *see also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ properly ignored opinion of psychiatrist who examined Plaintiff because "[a]fter-the-fact psychiatric diagnoses are notoriously unreliable.").

In this case, the ALJ found Dr. Cardon started treating Plaintiff in September 2010, assisting Plaintiff with orthotics he had reportedly been using for three years. Tr. 788-89. After a follow-up that October, Plaintiff did not return to Dr. Carden until March 2012, when Dr. Cardon diagnosed progressive foot arthritis. Tr. 784, 1213. Dr. Cardon provided opinions based on a diagnosis made six years *after* the period at issue, and because there was no medical evidence from that period to corroborate Dr. Cardon's opinions and inconsistent evidence from after the period (noted below), the ALJ reasonably could accord Dr. Cardon's retrospective opinions less weight.

In partially rejecting Dr. Cardon's opinions, the ALJ also relied upon medical evidence showing relatively little physical impairment with minimal and

conservative treatment. Tr. 784-85. An ALJ may reject a treating physician's

opinion if the physician prescribed a conservative course of treatment. *See Rollins*

*v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ met his burden by

giving a detailed review of Plaintiff's treatment history, which included, "no

documented complaints of a foot impairment until September 2010," no reference

to foot complaints in his primary medical care in 2011, 2013 and 2014, no

reference to foot issues in a comprehensive physical evaluation in 2015, no

findings of impaired gait, and no documented treatment after April 2016. Tr. 784-

85. In addition, substantial evidence supports the ALJ's finding that Plaintiff's

foot impairment was managed with orthotics and corrective shoes, and without

pain medication. Tr. 785. Plaintiff does not contest these findings, noting only

that he was regularly seen by Dr. Cardon and that surgery "is not an option . . . at

the current time." ECF No. 15 at 16. Regarding the relevant period as of July

2006, Plaintiff's limited and conservative treatment of his feet supports the ALJ's

rejection of Dr. Cardon's opinions pertaining to this period.

  Next, the ALJ found Plaintiff's activities inconsistent with Dr. Cardon's

opinions. Tr. 788. An ALJ may discount an opinion that is inconsistent with a

claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169

F.3d 595, 601-02 (9th Cir. 1999). However, the record must contain specific

details about the nature, frequency, and/or duration of the activities for them to

"constitute 'substantial evidence' inconsistent with a [treating physician's] informed opinion." *Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017). In reaching this conclusion, the ALJ's decision described specific activities and statements in the record regarding Plaintiff's ability to stand and walk, contemporaneous to Dr. Cardon's treatment of Plaintiff. In September 2010, Plaintiff had reported to Dr. Cardon that he could he could walk for a "couple of miles." Tr. 789 (citing 1213 (progress note discussing orthotics stating "[h]e tries to wear them when he is exercising and can only wear them for [sic] couple of miles.")). In October 2011, Plaintiff wrote, "I can only be on my feet for a couple hours," though they would begin hurting sometimes after 20 minutes or less. Tr. 786 (citing Tr. 262); *see* Tr. 264 ("I can be on them for about 2 hours at most…"). At the hearing in 2017, the ALJ also developed the record regarding the extent and the frequency of increased activity level and Plaintiff testified that for two years he usually walked in the evening for 30-45 minutes. Tr. 809. The ALJ also noted that Plaintiff had reported mowing the lawn and enjoying fishing. Tr. 786; *see* Tr. 55, 259, 749 (Feb. 2011 progress note listing main hobbies as computer games and fishing); 1128. The Court rejects Plaintiff's contention the decision lacks adequate specificity. ECF No. 17 at 7; *Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). The ALJ reasonably concluded Dr. Cardon's

retrospective assessment of Plaintiff's ability to stand or walk in an eight-hour day was inconsistent with the substantial evidence of Plaintiff's activities.

The ALJ listed additional reasons for specifically rejecting Dr. Cardon's January 2017 opinion that as of July 2006 Plaintiff met the definition of "major dysfunction of a joint" "resulting in inability to ambulate effectively" "to carry out activities of daily living." Tr. 1751. First, the ALJ noted that the assessment was inconsistent with Dr. Cardon's prior assessments, none of which included a finding that Plaintiff could not ambulate effectively. Tr. 789. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Moreover, the ALJ may properly reject a medical opinion that gives no explanation for deviating from the provider's prior medical opinion. *See Morgan*, 945 F.2d at 1081. The ALJ noted that Dr. Cardon's 2017 opinion was "without any explanation or support"; where prompted on the yes/no "check box assessment" to provide an explanation, Dr. Cardon left the form blank. Tr. 789.

Next, citing the disparity between Dr. Cardon's unexplained opinion and "the available evidence," the ALJ concluded Dr. Cardon "heavily relied" upon the Plaintiff's own reports of pain symptoms, which he found were not reliable. Tr. 789. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  The lack of treatment or medical evidence from the 2006 timeframe Dr. Cardon opined on supports to the ALJ's conclusion that Dr. Cardon heavily relied upon Plaintiff's self-report.

Finally, Plaintiff argues generally that the ALJ erred in discrediting Dr. Cardon's opinion by failing to apply the appropriate factors to the evaluation of a treating provider's opinion.  ECF No. 15 at 17 (citing *Trevizo*, 871 F.3d at 676).  Unlike *Trevizo*, here the ALJ noted that Dr. Cardon was a treating provider, exhaustively reviewed Dr. Cardon's treatment notes throughout the decision, identified substantial evidence that was inconsistent with Dr. Cardon's opinion, and made findings based on the ALJ's summary of the facts and evidence. *Compare* Tr. 784-90 *with Trevizo*, 871 F.3d at 675-77.

In sum, although retrospective medical opinions are relevant, the ALJ gave clear and convincing reasons for rejecting Dr. Cardon's 2017 assessment of a disabling impairment as of 2006, and partially rejecting his 2012 and 2016 assessments regarding absences and the standing/walking limitation.  The ALJ did not err in rejecting Dr. Cardon's opinions.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 15 at 17-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were

"not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 793.

### 1. Law of the Case

Defendant contends that Plaintiff's allegation of error relating to Plaintiff's mental health symptom testimony should be rejected under the law of the case doctrine. ECF No. 16 at 18-19. This Court previously concluded that the ALJ's 2013 decision did not err in assessing Plaintiff's mental health symptom claims. Tr. 889-93. The ALJ reiterated this Court's 2016 findings in his latest decision. Tr. 783, 786. Plaintiff did not reply to this contention. *See* ECF No. 17.

The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided—either explicitly or implicitly—in a previous decision of the same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.

In this Court's 2016 decision, the Court found that the ALJ had provided adequate reasons for discounting Plaintiff's subjective mental health symptom

complaints based upon his (1) activities of daily living, (2) lack of motivation to work, and (3) failure to comply with treatment. Tr. 893. The Court specifically directed the ALJ to re-evaluate Plaintiff's testimony and symptom claims on remand "with respect to the alleged foot impairment" and after considering evidence of Plaintiff's physical impairments. Tr. 894. However, the Court's Order left open and the ALJ remained free to reinterpret the evidence and take new evidence. *Id*. The Court notes that as to Plaintiff's mental health symptoms, Plaintiff does not challenge the ALJ's similar findings regarding activities of daily living related and lack of motivation, thus Plaintiff has not identified any compelling reason to review or deviate from the Court's findings on these issues that were also adjudicated previously. Regardless of the law of the case doctrine's applicability, as new evidence was received, and new findings were made, Plaintiff's limited contentions are addressed on the merits below.

  *2. Improvement with Treatment and Lack of Compliance with Treatment*

  The ALJ discounted Plaintiff's mental health symptom claims based on evidence of Plaintiff's lack of compliance with treatment and improvement with treatment. Tr. 783. This reason was also discussed in the ALJ's 2013 decision and previously affirmed by this Court. Tr. 892-93. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec.*

*Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ explained in detail evidence supporting the conclusion that Plaintiff's mental issues were "well-controlled and stable" when compliant with treatment and Plaintiff reported only intermittent compliance with medication. Tr. 783. The ALJ cited to academic testing and other medical evidence record, which the ALJ found demonstrated Plaintiff was "performing well in school with the use of psychiatric medication." Tr. 783 (citing Tr. 720, 722, 724, 733, 735, 744). Plaintiff does not contest this finding, but claims the ALJ failed to consider that Plaintiff was in an Individualized Education Program (IEP) to assist in Plaintiff's progress and behavior at school. ECF No. 15 at 18. However, Plaintiff's IEP does not alter the fact of Plaintiff's poor compliance with psychiatric medications, missed appointments, and the fact Plaintiff did not report major changes in his condition despite poor compliance. Tr. 783.

Plaintiff next contends that contrary to the ALJ's finding that Plaintiff's mental symptoms were well controlled, the *2016* opinion of licensed social worker M. Neil Anderson that Plaintiff would be off task 21-30% of a 40-hour work week

demonstrates Plaintiff's mental health symptoms, even with treatment, "had not improved to the point that he would be employable." ECF No. 15 at 19 (citing Tr. 1147, 1149). Notably, Plaintiff did not challenge the ALJ's detailed rationale for according minimal weight to Mr. Anderson's statements when determining Plaintiff's functioning through his 22nd birthday. Tr. 791. The ALJ instead primarily relied upon treatment records from the time period at issue. Tr. 783. The ALJ also reviewed the more recently developed record, noting that after Plaintiff's psychiatric care discontinued in 2004 due to poor compliance, Plaintiff had no documented mental health complaints until March 2015. Tr. 783 (citing 1098, 1112, 1140). Even once Plaintiff's psychiatric care resumed, it revealed "generally benign findings." Tr. 784. His treating practitioner concluded that while Plaintiff would benefit from therapy and improvement in social outlets, she did not believe Plaintiff would benefit from medication. Tr. 784 (citing Tr. 1107-08). By May 2016, Plaintiff reported improvement in his mental health goals and decreased psychotherapy sessions. Tr. 784. As this Court previously found, Plaintiff's minimal treatment and non-compliance with treatment were specific, clear and convincing reasons for not fully crediting Plaintiff's allegation of disabling mental health symptoms.

*3. Symptom Claims Re: Foot Impairment*

Plaintiff also claims the ALJ improperly partially rejected his complaints of foot pain. ECF No. 15 at 20. Rather than briefing the same arguments, Plaintiff incorporated by reference the same argument raised earlier in the brief regarding Dr. Cardon's opinion evidence. *Id.*

In this case, the ALJ exhaustively reviewed the evidence and detailed the basis and reasons for his rejection of Plaintiff's symptom claims. Tr. 783-88. Although the ALJ in fact partially credited Plaintiff's claims of foot pain, the ALJ rejected the allegation of disabling symptoms for a number of reasons. First, the ALJ cited the lack of treatment until September 2010, despite alleging that Plaintiff had missed class years prior in high school due to foot issues. Tr. 785. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ noted Plaintiff had no documented complaints of foot pain until September 2010 when he visited Dr. Cardon and he did not seek further treatment until March 2012. Tr. 784. Plaintiff's lack of treatment was a clear and convincing reason to discount Plaintiff's claims of a disabling symptoms associated with his foot impairment.

Second, the ALJ cited adequate control with the use of orthotics and conservative treatment of pain. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Warre*, 439 F.3d at 1006 (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)). The ALJ noted that Plaintiff had affirmed in his testimony that his foot impairment was managed solely with orthotics, and without pain medication. Tr. 785. In 2012, Dr. Cardon advised Plaintiff to use ice, anti-inflammatory medication, and rest to relieve his reported intermittent foot pain. Tr. 785 (citing Tr. 765 (Oct. 16, 2012 chart note). After supports were added to Plaintiff's orthotics, his primary medical care treatment records did not refer to any foot complaints. Tr. 785. Plaintiff later visited Dr. Cardon in August 2015 and April 2016 to discuss getting a new pair of shoes or stretching his shoes in order to

ORDER - 33

improve ambulation. Tr. 785 (citing Tr. 1085-93). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

Third, the ALJ cited the lack of examination findings of significant impairment as incompatible with Plaintiff's allegation of disabling foot pain. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680. Here, the ALJ noted the medical evidence did not reflect Plaintiff had any significant impairment in his gait or ambulation, edema, or need to elevate his legs. Tr. 785. Furthermore, there was no reference to foot complaints in his primary medical care in 2011, 2013, and 2014, as well as unremarkable findings in his visit with Dr. Cardon in 2014 and 2015 and in his physical evaluation conducted in in 2015. *Id.*; *see* Tr. 1094 (Dec. 2014 visit with Dr. Cardon grading Plaintiff's pain as "mild" and "staying the same"); Tr. 1096 (Jan. 2015 visit with Dr. Cardon indicating no edema and "mild" pain); Tr. 1140 (Mar. 2015 physical examination). The lack of

medical evidence supporting the reported disabling symptoms was a clear and convincing reason to discount Plaintiff's symptom claims.

Fourth, the ALJ found Plaintiff's activities were inconsistent with the alleged severity of both his mental and physical impairments. Tr. 785. It is reasonable for an ALJ to consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of her day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. The ALJ identified evidence in the record where Plaintiff had reported caring for pets, occasionally doing household chores, walking up to 30 to 45 minutes for exercise, mowing the lawn, and fishing. Tr. 786; *see* Tr. 1213 (discussing wearing orthotics for a "couple of miles"); Tr. 809 (testimony Plaintiff walked in the evening for 30-45 minutes); Tr. 259 (listing mowing as an activity Plaintiff can do); Tr. 749 (Feb. 2011 progress note listing main hobbies as computer games and fishing). This was

a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom claims.

Finally, the ALJ found that the record as a whole suggested Plaintiff's lack of employment was due to a lack of motivation, independent of his impairments. Tr. 786. Evidence of self-limitation and lack of motivation to work are proper considerations in assessing a Plaintiff's symptom claims. *Tommasetti*, 533 F.3d at 1040 (9th Cir. 2017). The Court notes that this reason was also previously reviewed and affirmed in this Court's February 17, 2016 decision. Tr. 891-92. The ALJ noted that additional evidence obtained after this Court's decision continued to suggest Plaintiff's lack of motivation. For example, in July 2015, Plaintiff told his counselor that he was "about the same, bored" and that he had not put effort into engaging in a job search. Tr. 786-87 (citing 1126). In October 2016, Plaintiff agreed with his counselor's comment that he had not put effort into looking for work or changing his situation, at which point, his counselor suggested that Plaintiff discontinue therapy because "he has essentially met his treatment goals." Tr. 787 (citing Tr. 1745). The ALJ properly considered Plaintiff's lack of motivation to work in rejecting Plaintiff's symptom claims.

The sole arguments raised by Plaintiff, ECF No. 15 at 20, were addressed by the court, *supra*, in upholding the ALJ's evaluation of Dr. Cardon's opinions.

Accordingly, the Court concludes the ALJ offered specific, clear and convincing reasons for partially rejecting Plaintiff's symptom claims regarding the severity of his foot impairment.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 10, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE